United States Bankruptcy Court
Southern District of Texas
**ENTERED**
November 12, 2025
Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| ERICH WAHL, JR., *et al.*, | § § | CASE NO: 24-35395 |
| Debtors. | § § § | CHAPTER 7 |
| GCM CAPITAL LLC, | § § | |
| Plaintiff, | § § | |
| VS. | § § | ADVERSARY NO. 25-3054 |
| ERICH WAHL, JR., | § § § | |
| Defendant. | § | |

### MEMORANDUM OPINION GRANTING DEFENDANT ERICH WAHL'S MOTION TO ENFORCE SETTLEMENT AGREEMENT

This matter comes before the Court on Defendant Erich Wahl's Motion to Enforce Settlement Agreement.[1] For the reasons explained below, the Court grants Debtor's motion.

### BACKGROUND

On November 15, 2024, Erich Wahl Jr. and Kasey Lynn Walcott filed a voluntary petition under Chapter 7 of Title 11 of the United States Bankruptcy Code.[2] Pre-petition, Mr. Wahl was a co-owner and officer of several entities operating nursing facilities.[3] On February 18, 2025, GCM Capital LLC (hereinafter "GCM" or "Plaintiff") filed an adversary proceeding against Mr. Wahl (hereinafter "Debtor" or "Defendant").[4] GCM's complaint contains causes of action against the

---

[1] ECF No. 26.
[2] Case No. 24-35395, ECF No. 1.
[3] ECF No. 26 at 2.
[4] ECF No. 1.

Debtor for non-dischargeability of debt pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (B).[5] In it, GCM requests a judgment "providing that the debt, in the amount of at least $348,964.63, against the Debtor is non-dischargeable in the Bankruptcy Case, and in any subsequent bankruptcy case filed by the Debtor under Title 11."[6]

On September 5, 2025, Defendant filed a Motion to Enforce Settlement Agreement alleging that GCM and Defendant had agreed to settle the instant adversary proceeding on June 25, 2025.[7] In its motion, Defendant Wahl contended that on June 3, 2025, GCM sent a formal settlement offer to Defendant's counsel to which he accepted the non-monetary terms "subject to minor nits."[8] Defendant contends the parties then went back and forth on the monetary amount before finally agreeing to the payment amount and terms on June 25, 2025.[9]

At an October 30, 2025 hearing before this Court, Defendant presented evidence of GCM's original settlement proposal and an email exchange between the parties discussing the settlement.[10] GCM's June 3rd letter shows GCM offered to settle all clams against the Debtor for a judgment amount of $174,000—which was to be reduced and eventually eliminated in accordance with timely payments of $4,350 a month for twenty months.[11] The offer also included cooperation provisions requiring that the Debtor fully cooperate with GCM and its counsel to investigate potential litigation against other individuals or entities.[12]

---

[5] ECF No. 1 at 9–15.
[6] ECF No. 1 at 15.
[7] ECF No. 26.
[8] ECF No. 26 at 4.
[9] ECF No. 26.
[10] *See* ECF No. 37-1; ECF No. 37-2.
[11] ECF No. 37-2 at 1.
[12] ECF No. 37-2 at 2.

Following GCM's offer, the parties exchanged several emails, mostly regarding the payment amount and terms.[13] Below is a table outlining the series of email exchanges[14]:

| Date | Email |
| --- | --- |
| **June 3, 2025** | GCM sends Defendant's counsel an email attaching a settlement proposal. |
| **June 12, 2025** | Defendant's counsel states that "[m]ost of the agreement is acceptable subject to minor nits." Defendant counters GCM's offer with $1,500 a month for thirty-six months. |
| **June 13, 2025** | GCM's counsel responds, "[a]ssuming all the appropriate language on cooperation and information/depositions, etc. is acceptable," and counters Defendant's offer for a $122,000 consent judgement (plus interest)—along with a forbearance agreement permitting a total of $72,000 to be paid at $2,000 a month for thirty-six months. |
| **June 24, 2025** | Defendant's counsel proposes the payment terms of $1,750 per month for thirty-six months. |
| **June 25, 2025** | GCM accepted Defendant's payment terms for $1,750 per month for thirty-six months in addition to a $150,000 nondischargeable consent judgment. |
| **June 25, 2025** | Defendant's counsel writes, "Mr. Wahl accepts the proposed settlement" and that he looked forward to seeing the settlement documents to finalize matters. |

---

[13] ECF No. 37-1.
[14] *See* ECF No. 37-1.

In response, GCM alleges that the parties did not reach an agreement because negotiations were never finalized.[15] GCM argues that the Defendant did not unequivocally accept all material terms, including its proposed cooperation provisions.[16] It further alleged Defendant failed to disclose material information during the parties' settlement negotiations—information it discovered after the email exchanges discussed above.[17] GCM alleges that this "new information" caused them to withdraw from the settlement negotiations before the parties reached a final agreement on all material terms.[18]

## JURISDICTION

28 U.S.C. § 1334(a) provides the district courts with jurisdiction over this proceeding. 28 U.S.C. § 157(b)(1) states: "Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title." This proceeding has been referred to this Court under General Order 2012-6 (May 24, 2012). This Court has jurisdiction in this proceeding as it is a core proceeding which the Court can consider under 28 U.S.C. §§ 157(b)(2)(A) and (I). The Court has constitutional authority to enter final orders and judgments. *Stern v. Marshall*, 564 U.S. 462, 486–87 (2011). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## DISCUSSION

Federal courts have an "inherent power to recognize, encourage, and when necessary enforce settlement agreements reached by the parties." *See Bell v. Schexnayder*, 36 F.3d 447, 449 (5th Cir. 1994). A

---

[15] *See* ECF No. 30 at 1.
[16] *See* ECF No. 30 at 1, 12.
[17] *See* ECF No. 30 at 7–8. GCM's response alleges it discovered "new information" through discovery in a separate New York lawsuit. This "new information" allegedly shows the Debtor (or persons controlled by the Debtor or in business with the Debtor) posses, in an undisclosed trust or account, funds sufficient to pay GCM.
[18] ECF No. 30 at 7.

settlement agreement is a contract. *Alford v. Kuhlman Elec. Corp.*, 716 F.3d 909, 912 (5th Cir. 2013). Once the parties have agreed to a settlement agreement it can not be repudiated by either party and will be summarily enforced. *See CIA Anon Venezolana de Navegacion v. Harris*, 374 F.2d 33, 35 (5th Cir. 1967). Thus, "[w]hen faced with the issue of enforcing a compromise, a federal court must determine whether an agreement was reached under applicable state law."[19] *Hyperion Found., Inc. v. Acad. Health Ctr., Inc. (In re Hyperion Found., Inc.)*, No. 09-05043-NPO, 2009 Bankr. LEXIS 3543, at *8 (S.D. Miss. Oct. 27, 2009).

To establish that a binding agreement was entered into, a party must prove "an offer and acceptance and a meeting of the minds on all essential terms."[20] *See Principal Life Ins. Co. v. Revalen Dev., LLC*, 358 S.W.3d 451, 454 (Tex. App.—Dallas 2012, pet. denied); *Ibe v. Jones*, 836 F.3d 516, 524 (5th Cir. 2016). A meeting of the minds on all material terms of a settlement agreement occurs when parties have agreed to the settlement amount and liability to be released. *Chowning v. Boyer*, No. 03-20-00387-CV, 2021 Tex. App. LEXIS 6116, at *17 (Tex. App.—Austin July 30, 2021, no pet.) (citing *Padilla*, 907 S.W.2d at 460–61); *Young v. Ershick*, 617 F. Supp. 3d 563, 581–82 (E.D. Tex. July 29, 2022) ("Texas

---

[19] The Fifth Circuit has explained: there is "[n]o strong federal interest in the issue of the validity of settlements entered into to resolve a bankruptcy suit. Federal bankruptcy law fails to address the validity of settlements and this gap should be filled by state law. As we have held in federal diversity suits, a settlement is a contract and is best resolved by reference to state contracts law." *Houston v. Holder (In re Omni Video)*, 60 F.3d 230, 232 (5th Cir. 1995).

[20] Additionally, Rule 11 of the Texas Rules of Civil Procedure provides: "no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record." Tex. R. Civ. P. 11. Texas courts have interpreted an email as sufficient to satisfy the "in writing" requirement of Rule 11, so long as it contains all material terms. *See Quick v. C.L. Cashion Enters., LLC*, No. 05-23-01124-CV, 2025 Tex. App. LEXIS 1759, at *7 (Tex. App.—Dallas Mar. 14, 2025, no pet.) (mem. op.); *see also Padilla v. La France*, 907 S.W.2d 454, 460–61 (Tex. 1995) (holding a series of letters between attorneys confirming settlement and containing payment and release as a valid Rule 11 agreement); *Shamrock Psychiatric Clinic, P.A. v. Tex. Dep't of Health & Human Servs.*, 540 S.W.3d 553, 561 (Tex. 2018) (finding an email exchange to satisfy the Rule 11 writing requirement).

courts have long 'held that the essential terms for a settlement agreement are the amount of compensation and the liability to be released.'").[21]

Here, the evidence supports a finding that the parties entered into a binding settlement agreement. Defendant provided evidence that GCM made an initial offer on June 3, 2025.[22] Defendant's counsel responded to this offer saying that "most of the agreement is acceptable subject to minor nits" then proceeded to counter the payment amount.[23] A series of back-and-forth negotiations occurred resulting in a June 25th email from GCM accepting Mr. Wahl's proposed payment terms and proposing a nondischargeable consent judgment in the amount of $150,000—to which Defendant's counsel wrote to GCM notifying them that "Mr. Wahl accepts the proposal settlement."[24] This evidence demonstrates that there was an offer by GCM and an acceptance by Mr. Wahl.

GCM's settlement proposal letter together with the email exchanges regarding the payment amount supports a finding that there was a meeting of the minds on all essential terms. The essential terms parties must agree to are the payment amount and liability to be released. *See Chowning*, 2021 Tex. App. LEXIS 6116, at *17. The June 25th email exchange is evidence of the accepted and agreed to consent judgment amount of $150,000 and payment terms.[25] The nature of the negotiation was to settle GCM's claims against the Defendant in this adversary proceeding. The release of liability for such claims is proposed

---

[21] As to what are the "essential" or "material" terms of a contract, federal law comes to the same conclusion. *See Lee v. Gulf Coast Blood Ctr.*, No. H-19-4315, 2020 U.S. Dist. LEXIS 145806, at *15 (S.D. Tex. Aug. 13, 2020) (quoting *Johnson v. BP Exploration & Prod. (In re Deepwater Horizon)*, 786 F.3d 344, 357 n.26 (5th Cir. 2015)) ("A meeting of the minds on all essential terms of a settlement agreement is generally present 'where the parties have agreed upon the monetary amount of the settlement payment and the fact that plaintiffs will release specific claims.'").

[22] *See* ECF No. 37-2.
[23] *See* ECF No. 37-1 at 7.
[24] ECF No. 37-1 at 5.
[25] ECF No. 37-1 at 5.

in GCM's June 3rd letter to which Defendant accepted when he agreed to the proposed settlement.[26]

The parties June 25th email exchange is evidence that there were no other essential terms to negotiate.  *See Lee*, 2020 U.S. Dist. LEXIS 145806, at *15 ("If the parties' communications indicate that an agreement has been reached and there are no material terms outstanding to negotiate, the court can enforce a settlement agreement made orally or by email.").  Because the parties agreed to all material terms, their agreement is binding and enforceable.  Once parties enter into a settlement agreement, it cannot be repudiated by either party because they changed their mind or realized it was a bad deal.  *See CIA Anon Venezolana de Navegacion*, 374 F.2d at 35.

GCM argues that the parties did not agree to all material terms because it was unclear whether the Debtor agreed to the cooperation provisions.[27]  GCM alleges that counsel's statement that most of the agreement was acceptable "subject to minor nits" was not an unequivocal acceptance of their proposed cooperation provisions.[28] However, Defendant argued, and the Court agrees, that even if the cooperation provisions were needed for there to be a valid agreement, the evidence supports that they were agreed to.

After Defendant's counsel countered GCM's initial offer, GCM's counsel stated, "[a]ssuming all the appropriate language on cooperation and information/depositions, etc. is acceptable" then countered the payment amount and terms.[29]  Defendant's counsel did not object or thereafter contest those provisions, and on June 25th accepted GCM's settlement proposal.[30]  Additionally, Defendant testified that he read the settlement proposal letter, and it was his understanding that he was agreeing to those provisions when he authorized his counsel to accept

---

[26] *See* ECF No. 37-1; ECF No. 37-2.
[27] *See* ECF No. 30 at 1, 12.
[28] ECF No. 30 at 12.
[29] *See* ECF No. 37-1 at 7.
[30] *See* ECF No. 37 at 5–7.

the June 25th settlement offer. This evidence supports Defendant's argument that he accepted GCM's proposed cooperation provisions when he agreed to settle.

Additionally, GCM argued that the parties did not have a binding agreement to settle because their agreement was subject to approval by this Court under Rule 9019.[31] *See* FED. R. BANKR. P. 9019. "Rule 9019(a) authorizes the 'trustee,' which includes the debtor in possession in a chapter 11 case, to seek an order approving a compromise or settlement." 10A Collier on Bankruptcy ¶ 9019.01; *see also* FED. R. BANKR. P. 9001(11) (defining a "trustee" as including a debtor in possession in a Chapter 11 case). Because this case does not have a trustee or a debtor in possession, Rule 9019 does not apply in this instance and an order from this Court is not a prerequisite to enforcement. Furthermore, the nature of this action, a non-dischargeability complaint under 11 U.S.C. §§ 523 (a)(2)(A) and (B), would not impact the estate or augment the assets available for distribution.

Federal courts have an inherent power to recognize and enforce settlement agreements. *See Bell*, 36 F.3d at 449. "Where a party has knowingly and voluntarily agreed to settle his claims and no change of circumstances warrants repudiation of the agreement, the courts will enforce the settlement agreement." *Lyles v. Com. Lovelace Motor Freight, Inc.,* 684 F.2d 501, 504 (7th Cir. 1982). Because the parties entered into a binding agreement, the Court will grant Defendant's motion to enforce the settlement agreement.

## CONCLUSION[32]

For the reasons described above, the Court **GRANTS** Defendant Erich Wahl's Motion to Enforce Settlement Agreement. The Defendant should settle a proposed form of order within 14 days setting forth the

---

[31] *See* ECF No. 30 at 14–15.
[32] This Memorandum Opinion constitutes the findings of fact and conclusions of law required by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

parties' agreements. Any objections to the form of order will be due 14 days thereafter.

    SIGNED 11/12/2025

                                                      Alfredo R Pérez
                                                      United States Bankruptcy Judge